NO. 7627.

STATE OF LOUISIANA

DE SOTO BUILDING CO, LTD

COURT OF APPEAL

VS

M. L. KOHNSTAMM.

PARISH OF ORLEANS.

7627

# OPINION.

By his Honor John St. Paul.

This is a suit for rent; the issue is, "Was there ever a completed contract between the parties?"

Defendant addressed and submitted to one "Leo Fellman" an offer to rent certain premises for a certain time and for a certain monthly rental; which offer contained this clause; "It is understood and agreed that, if this offer is accepted, lease on your form and rent notes will be immediately signed; further, that the right that either party would have to withdraw from this agreement at any time before the actual signing of the lease and rent notes is waived, renounced and abandoned; and that the contract of lease becomes final, irrevocable and executory by acceptance of this proposition."

At the bottom of the offer Fellman wrote; "Accepted; Leo Fellman, President De Soto Building Co;" the said Company being a corporation and being the owner of the premises.

I

Assuming for the moment, that Fellman was authorized to act for the Corporation, we think the offer and its acceptance constitute a completed contract between the parties.

The case does not come within the circumstances of Laroussini vs Werlein, 52 An 426 (followed ## in Woodville vs Kantrowitz, 115 La. 810) where it is announced, (somewhat too broadly however) that a verbal or written agreement is not binding if it contain in itself an agreement to execute a subsequent and more formal written agreement on the same subject.

Of course that doctrine is absolutely true when the parties have left something still in abeyance, and to be agreed upon at the time of confecting the later instrument; because in that case there has been as yet no complete accord between the parties, who remain still at liberty to disagree about those phases of the matter which have not yet been concluded.

56

But on principle it would seem otherwise where the parties have agreed as to all the terms of their contract, and there remains nothing now to be done but the purely physical and quasi-mechananical, act of putting those terms in written form; and so our Supreme Court has held in Kaplan vs Whitworth, 116 La 337. See also 9 Cyc 282, (Note 99).

And to put the matter at rest, (so far as we can), we may now say that in the Werlein case where the agreement was verbal and informal, the court found as a fact, that owing to the nature and magnitude of the transaction involved, the course of proceeding between the parties on former occasions, and the evident belief of the plaintiff that he was not secure in his rights without the written contract, it was therefore reasonable to presume that the parties had no intention to bind themselves otherwise than by a written contract. And the Woodville case simply follows the broad doctrine of the Werlein case, without attending to the latter and more important feature of that case.

But the doctrine of the Werlein case has been modified, as we have said, in the Kaplan case; and properly so, we think.

For it is perfectly clear that the agreement to execute a new instrument is often purely superfluous in so far as the contract itself is concerned; since "the contract must not be confounded with the instrument in writing by which it is witnessed." C. C. 1762; as where the parties have signed one original instrument and agree therein that a duplicate will thereafter be signed; or where the parties when about to sign their agreement perceive that it contains erasures and interlineations or has been #### soiled, and add therein a clause that a clean copy shall be made, which they agree to sign and substitute for the first.

In both these cases it is manifest that no further mental act is required of the parties, but only the purely physical act of transcribing and signing. But since a contract is the result of a mental act, "a mere operation of the mind"(C. C. 1797), it follows necessarily that the contract is the result of the first act of the

parties, whilst the second operation produces only "the instrument in writing by which it is witnessed."

It is also quite true that if it be the intention of the parties that they should not be bound except by the subsequent written agreement (as the court found the fact to be in the Werlein case) then of course they are not bound except when that act has been signed.

But the reason of this is not because the law so holds, but because the parties have so agreed; and this is clearly pointed out by ### Pothier in his work on Obligations. Section 11.

It is also true that it was the positive Roman Law, that where the parties had bargained verbally but agreed to reduce their contract to writing, the parties were not bound until the writing was completed; but this applied only to sales, and was purely statutory, being in d an inovation introduced for the first time by Justinian himself, in his Constitution of June 1st 528, (Codex 4.21. 17) and incorporated by Tribonian in the Institutes (( J. 4. 23 (24) pr. ))

But as every lawyer knows, the Roman Law consists of two wholly distinct divisions or classes of Law; 1. The New Law, found in the Codex, being the positive enactments or constitutions of the ######### Emperoxs and 2. The Old Law, found in the Pandects or Digest, founded on the Jus Gentium, or Natural Law, as expounded by those Ancient Sages, the Jurisconsults, who have been the wonder of all learned men, and of whom Leibnitz has said, that their reasoning was as exact as the demonstrations of Mathematicians.

This latter law, founded on principles that are eternal, always has been and always will be Law throughout the whole world; and is still the Law of this ### State. Reynolds vs Swain, 13 La 196.

But the former, purely arbitrary in character, is no longer law in this State, having been abrogated by the statute of 1826 (Rev. Statutes, Section 2166). Reynolds vs Swain, 13 La 196.

58

Again, the Article of our Civil Code (2463) relative to the giving of <u>earnest</u> in promises of sale, is taken <u>verbatum</u> from the very paragraph of the Institutes containing the aforesaid law of Justinian. But the compilers of our code, who were perfectly familiar with the Roman law, adopted that part of the paragraph relating to <u>earnest</u> (also an innovation on the Old Law), yet rejected the rest; thus clearly intending to exclude that portion from our law. On the contrary, they wrote into our code just above the article about earnest money, the very opposite of Justinians' law, to wit, that the promise of sale <u>would be binding</u>.(C. C. 2462).

We are therefore satisfied that unless it be found as a matter of <u>fact</u>, that the parties <u>intended</u> not to be bound until the subsequent act be signed their first agreement binds them, if it appear to leave nothing else to be concluded by them except the physical act of drawing up the agreement as made and the signing of the same. The cases in which the doctrine of the Werlein case was first laid down ( 3 M. 349- I N. S. 422) were decided under the Spanish i.e. Roman Law, then in forwe but should not have been followed after the act of 1828 (Se P. 5.5.6)

Now in the case before us it is quite clear that the parties <u>did</u> <u>not</u> <u>intend</u> that they should be bound <u>only if</u> <u>and</u> <u>when</u> the formal act of lease was signed; but on the contrary they said in language too plain to be mistaken, that their intention was to be bound then and there. And since, as we have said, the law does not say otherwise, and does not forbid it, it is clear that <u>their</u> <u>will</u> is the law between them ( C. C. II, 1764; Kaplan vs Whitworth, 116 La 337.)

II.

In what precedes we have assumed that the parties had agreed on all the provisions which the lease was to contain, and had only to perform the physical act of reducing the same to writing and signing it.

We assumed this because, as we have said, the offer recited that, "lease on your (Fellman's) form and rent notes will be drawn up and immediately signed." See 9 Cyc 582

59

Now the evidence shows that Fellman had a regular printed form of lease and rent notes containing blanks to be filled in with dates, names, amount of rent, and description of the premises.

Copies of such lease and rent notes are in the record, and a mere inspection of them shows that, with the offer and acceptance before him, any person with enough education to read and write could have filled them out in a few minutes so as to represent exactly what the parties had agreed upon. Hence there remained to be done only the physical act of filling out the form (which might be done even by a  third person) and the physical act of signing.

### III.

The defendant claims that the contents of the offer he made were not read by him, and were misrepresented; but this is abundantly disproved; except that it is not pretended that he read the form of lease and rent notes which he agreed to sign.

But as the offer which he did read, refers in plain terms to that form, it was his place to examine it before agreeing to sign it. His failure to do so cannot now be urged. See Bagnaris vs Oddo 7471 and authorities there cited-also 120 La 901, 921; 121 La 514, 515, 516 and Corpus Juris p. 570- Note 25.

### IV.

It is further urged that (as it now appears) the lease which was presented for his signature, had a rider attached thereto containing other conditions not agreed to.

Of course defendant was not required by his offer to sign any lease but that which he had agreed to, and had he objected on those grounds, and plaintiff had still insisted, that would have been another matter; indeed he might then have done just what plaintiff is doing now, viz, insisted that his rights were fixed by the offer and its acceptance; and have had those rights recognized by the Court

But defendant did not object to the lease presented to him on those grounds; he simply declined to sign any lease whatever; in point of fact he does not appear to have known of such a rider until it was produced in court.

60

## V.

The plaintiff alleges in its petition, paragraph 2, that defendant's offer was "duly accepted by petitioner, through its duly authorized president Leo Fellman." Defendant in his answer to that paragraph "admits signing a document x x x but denied that said document was of the purport or had the effect as stated in said petition."

Of course the allegation that plaintiff's president was duly authorized, was a material and necessary allegation of fact to support a cause of action; and as the above answer denies no allegation of fact in said paragraph contained, but merely denies its proposition of law, it follows that the matters of fact contained therein must be "deemed to be admitted." Act 300 of 1914, Sec I.

It was therefore unnecessary to prove the authorization of the president; and hence we are not called upon to examine the correctness of a ruling of the lower court of which the transcript contains only the following bare recital;

"By Mr. Suthon (to Mr. Fellman) Q. Were you authorized by the De Soto Building Co. to sign this acceptance?

By Mr. Danziger; Objected to.

By the Court; Objection sustained."

Of course a ruling in this shape cannot be reviewed except for the purpose of calling up the stenographic notes (if any) showing the grounds of objection, since an objection without grounds is of course without merit. (Act 61 of 1908-Standard Distilling Co vs Aronson, 9 Orleans App. 323). But as the evidence was unnecessary no such action is needed here. (Lewis vs R. R. Co, 7267; Rhea vs Motor Co, 7144; Miller vs Lafontaine, 8 Orleans App. 162).

## VI.

It is contended that the offer having been addressed to Leo Fellman, and not to Leo Fellman, Agent, its acceptance by the plaintiff created no obligation between it and defendant, and we are referred to a number of authorities supporting the well known doctrine that an agent contracting in his own name without disclosing his principal, renders himself personally liable to the other party.

61

That doctrine means nothing more than this; that under such circumstances the other party, on discovering the fact of agency, may hold either the agent or his principal at his option. (Johnson vs Bisso Tow Boat Co. 7279 Ct App. 9 Cyc 387 Note 40.

But it has no application here except to confirm the complement to the proposition, viz; that if it create such an obligation between the other party and the undisclosed principal as to entitle the former to hold the latter, it must necessarily be such an obligation as to entitle the principal to come forward and hold the other party; since a contract binds both parties or neither.

And hence we find the rule this stated in Corpus Juris (Verbo Agency) viz; "It is well established general rule that where an agent on behalf of his principal enters into a simple contract, as though made for himself, and the existence of the principal is not disclosed, the contract inures to the benefit of the principal, who may appear and hold the other party to the contract made by the agent." 2 Corpus Juris 873.

This quotation is supported by citations from almost every state in the Union, and there are no citations to the contrary. There is no citation from this State, and we know of no authority directly in point, but the correctness of the principle is so obvious that there can be no doubt of its acceptance here when occasion arises, as it does now.

The trial judge found the case to be with plaintiff, and his finding appears to us correct.

Judgment Affirmed.

New Orleans La., November 24th 1919.