COLE, Justice.
The issue in this case is whether or not an insured has a right of action against a reinsurance company for proceeds due under a policy of reinsurance.
The facts giving rise to this procedurally complicated case are as follows. An automobile accident occurred in 1974 wherein an employee of Arrow Trucking Company, driving a tractor-trailer rig, collided with a pick-up truck driven by Jimmy Este. Este was killed and his passenger, Roy Case, was severely injured. As a result of this accident and the subsequent lawsuits, Arrow was cast in judgment for $800,000 in the Case lawsuit and $260,000 in the Este suit. Arrow’s primary insurer, Continental Insurance Company, paid its policy limits of $100,000 in each case. At the time of this accident Arrow had in effect a policy of “excess insurance” with Reserve Insurance Company in the amount of $2,000,000. After the judgment was rendered, but before it became final, Reserve went into liquidation. Because of Reserve’s insolvency, Arrow had to pay the balance of the judgment — $860,000 plus legal interest and court costs.
Arrow and Reserve’s liquidator, Phillip R. O’Connor, each filed a separate suit against Continental, alleging Continental had acted in bad faith in failing to settle *219 the lawsuits and as a result had exposed Arrow and Reserve to liability for the amounts exceeding the primary insurance coverage. Continental filed a reconventional demand against Reserve, alleging it was Reserve who had failed to settle. Continental alleged further Reserve had a contract of reinsurance with North American Reinsurance Corporation, specifically covering the Arrow policy, and that proceeds from the reinsurance contract had been paid into the liquidator’s general fund.
The two cases against Continental were consolidated for trial. Arrow then intervened in the Reserve versus Continental case and asserted Reserve’s liquidator had no right to recover any funds from Continental in that such a right was Arrow’s alone. Arrow also filed a “third party demand” [1] against North American and the liquidator, claiming Arrow was entitled to the reinsurance proceeds. Other incidental actions, which do not concern us here, were also filed.
North American filed the peremptory exception urging the objections of no right of action and no cause of action and also filed a motion for summary judgment. North American asserted since there was no privity of contract between Arrow and North American, Arrow had no right or cause of action against them. Even assuming a right of action existed, North American contended it had paid the reinsurance proceeds (of $660,000) to the liquidator, as mandated by the terms of the agreement, and there being no genuine issue of material fact, it was entitled to summary judgment as a matter of law. The trial court agreed and granted both the exception and the summary judgment. Arrow then filed this appeal.
Before we address the arguments raised by appellant, we note reinsurance is defined by Black's Law Dictionary, 4th ed., as follows:
“A contract by which an insurer procures a third person to insure him against loss or liability by reason of original insurance. A contract that one insurer makes with another to protect the latter from a risk already assumed. It binds the reinsurer to pay to the rein-sured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured. Also the substitution, with the consent of the insured, of a second insurer for the first, so that the original insurer is released.”
Reinsurance is recognized in this state in La.R.S. 22:941 et seq., wherein it is stated that a “ceding insurer” may, by a reinsurance agreement, cede all or part of its risks to another insurer. La.R.S. 22:941(A). It is a contract between the insurer and the reinsurer only; the insured is usually not aware of its existence. For this reason it is generally recognized that the reinsurer is not liable to the insured (the policy holder) in any way and conversely, that the insured has no right of action against the reinsurer. 46 C.J.S. Insurance § 1220.
On appeal, Arrow contends even though the reinsurance agreement stated that upon Reserve’s insolvency, North American was to pay the proceeds to the liquidator, the agreement also included the proviso, “except as provided by law.” Appellant contends that under the laws of this state, there are two legal theories which afford it a right of action. First, Arrow argues they have a direct action against North American under La.R.S. 22:655. Second, Arrow contends the contract between North American and Reserve contained a “stipulation pour autrui” in its favor, and as such it has a right of action against North American.
Both theories were discussed and rejected in a case similar to the present one. Fontenot v. Marquette Casualty Co., 247 So.2d 572 (La.1971). This is the leading case involving reinsurance and was relied upon by the trial court. Therefore, before we address the two arguments we will set *220 forth the facts of Fontenot, (described by the trial court as practically a “goose case”) and will discuss the similarities and differences between it and the present case.
The Fontenot case involved parties similar to those here: an injured tort victim, an insured, an insolvent insurer and a reinsurer. In Fontenot, the party suing the rein-surer was the injured tort victim; in the present case the plaintiff is the insured. The reinsurance agreements in the two cases differed in several ways. In Fonten-ot the reinsurer assumed all of Marquette’s risks exceeding $10,000 per accident. In the present ease the reinsurer assumed the risk specifically for claims arising from Reserve’s policy covering Arrow. In Fonten-ot the reinsurance treaty provided that upon insolvency of the insurer the reinsurance “... shall be payable by the reinsurer,” without specifying to whom payment was to be made. In the present case the contract states that upon insolvency of Reserve, the reinsurance shall be payable “... directly to the Company or its liquidator ... except as otherwise provided by law.”
Another distinct difference between Fon-tenot and the present case concerns the applicability of La.R.S. 22:941 et seq. Those statutes grant a “domestic insurer” [one formed under the laws of this state— La.R.S. 22:5(3) ] the right to reinsure and, to that extent, do not address directly Reserve, an Illinois company, and its reinsurance agreement with North American. In Fontenot, the insurer, Marquette, was a domestic insurer and thus it was appropriate for the court to consider the applicability of these provisions of our insurance code. Regardless, a careful reading of the reinsurance agreement before us and the scheme of La.R.S. 22:941 et seq. suggests no conflicts but only analogous contractual and statutory considerations.
Concerning the direct action issue in Fontenot, the Supreme Court reversed the Fourth Circuit’s decision[2] and concluded the direct action does not apply to a contract of reinsurance because such a contract is one of indemnity rather than liability insurance. The court noted the distinction between the two, 247 So.2d 572, 576:
“The vital distinction between reinsurance and liability insurance is that reinsurance indemnifies the insurer for a loss which is actually sustained, whereas liability insurance is protection against the liability of an insured.”
The Fontenot court examined the direct action statute (La.R.S. 22:655[3]) and concluded that words such as “tort-feasor,” “omnibus clause,” “injured persons” and “liability policies” indicated the statute was never intended to apply to a contract of reinsurance. The court noted further that La.R.S. 22:943 created the only exception to the general rule that third parties have no right of action against a reinsurer. That statute allows a third party to sue a rein-surer directly when the reinsurer has agreed to “assume and carry out directly with the policyholder any of the policy obligations of the ceding insurer....” (There is no argument in the present case that North American directly assumed Reserve’s obligations under the policy.)
Appellant Arrow argues the significant distinction between the Fontenot case and the present one is that in Fontenot the person attempting the direct action against the reinsurer was a third-party tort victim as opposed to the named insured. We fail to see this as a valid distinction insofar as the direct action statute is concerned. In *221 fact, appellant’s argument becomes rather circuitous, upon further analysis. On the one hand appellant contends it is not a “third-party” to the contract of reinsurance because it was named specifically as an insured and should therefore be treated differently from the plaintiff in the Fon-tenot case. On the other hand appellant argues it is entitled to proceed under the direct action statute which is in fact a statute designed to give a third person (i.e., an injured person who has no privity of contract) a right of action against an insurer. Notwithstanding this semantical problem, we find the distinction as to the “type” of plaintiff to be of no merit. The holding of Fontenot is unequivocal. We quote from 247 So.2d p. 580 of the opinion:
“The direct action statute is not applicable to reinsurance policies where neither a novation of the original policy obligation nor a merger of the companies has occurred. When the direct action statute is read alone, it becomes clear that it could not create a direct right of action for a third party under a reinsurance contract.”
This holding is based upon the court’s decision that the reinsurance contract was not a liability insurance contract and stands without regard to whether the person claiming the right of action is a named insured on a reinsurance certificate or a tort victim.
While we have serious reservations about the correctness of the Fontenot holding, as an intermediate appellate court we are constrained to follow it. We find the dissent by Justice Dixon, (who is the only Justice of the Fontenot court still sitting), to be quite persuasive. He stated the majority’s distinction between an indemnity contract and a contract of liability insurance was merely an “attempted” one. He characterized the contract of reinsurance as one wherein Marquette protected itself against liability for the injury of other persons, therefore meeting the definition of liability insurance as defined by La.R.S. 22:6(4).[4] However, we do not find significant differences between Fontenot and this case. Because the Supreme Court has not as yet reconsidered its position, we reluctantly follow the rationale of Fonten-ot and hold the plaintiff in this case does not have a direct action against the reinsurer under La.R.S. 22:655.
Appellant’s second argument is that it is entitled to proceed against North American because the reinsurance contract contained a stipulation in Arrow’s favor, citing La. Civ.Code art. 1890. Although this argument was rejected in Fontenot, appellant contends the fact that Arrow was named specifically as an insured on the reinsurance agreement makes the eases distinguishable. We agree.
It is well settled a stipulation pour autrui must be in writing and must clearly reveal the contracting parties intended to stipulate some advantage for the third person. Fontenot, supra; Teacher’s Ret. System of La. v. La. State Emp. Ret., 444 So.2d 193 (La.App. 1st Cir.1983). The Fon-tenot court examined the reinsurance agreement and concluded it “... discloses no intention that the reinsurance contract stipulated anything in favor of the insureds of Marquette.” 247 So.2d 572, 579. The court concluded Marquette had sought the reinsurance solely for its own benefit.
The agreement in the present case states North American reinsures Reserve in respect to Reserve’s policy covering Arrow, the named insured. We agree with the Fontenot court a general reinsurance agreement in favor of all of the insured’s risks (exceeding a certain dollar amount), does not show an intent to stipulate a benefit for the insureds. However, the situation is entirely different when the agreement cuts through cumulative liabilities and states clearly it is for the specific purpose of reinsuring a policy covering only one named insured. We can reach no other conclusion but that this reinsurance was *222 obtained for the specific purpose of covering claims which might arise because of Arrow's liability. Indeed, North American’s obligation to pay Reserve was triggered only by one occurrence, i.e., Arrow being found liable for an injury.
The equity of the situation becomes apparent upon close scrutiny. Arrow paid Reserve a substantial premium for the $2,000,000 coverage. Reserve, because of Arrow’s premium payment, was in turn able to at least indirectly use a portion of this premium to cede to North American all but the initial $200,000 of the risk. In effect, Arrow was paying for the coverage from North American. In all fairness Arrow ought to benefit from this protection.
For these reasons we hold in a situation such as the present one, where the reinsurance contract states clearly the reinsurance is being issued to the insured in relation to a specific policy covering a named insured, that insured is a third-party beneficiary of the reinsurance contract and has a right of action against the reinsurer. The judgment of the trial court granting the exceptions and the summary judgment is reversed. Costs are to be paid by appel-lee, North American.
REVERSED.

. This demand was actually a “cross-claim” (La. Code Civ.P. art. 1071) because a third party demand is asserted not by a plaintiff, such as Arrow, but by a defendant. See La.Code Civ.P. art. 1111.

. See, Fontenot v. Marquette Casualty Co., 235 So.2d 631 (La.App. 4th Cir.1970).

. This statute reads in pertinent part as follows: "The injured person or his or her survivors or heirs hereinabove referred to, at 'their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure.”

. Liability insurance is defined in this statute as follows: "Insurance against the liability of the insured for the death, injury or disability of an employee or other person, and insurance against the liability of the insured for damage to or destruction of another person’s property.”