jjgCLAIBORNE, J.
This is an appeal by the plaintiff, Cecilia Daigle, from a judgment of the trial court in favor of the defendant, Marcia Vander-pool, finding that the lease éntered into between them on June 26, 1992, was valid only with regard to the primary term of ten years and that, at the expiration of the ten-year period on June 26, 2002, it was no longer valid. The judgment also decreed that Cecilia Daigle had no other right to remain on the premises owned by Marcia Vanderpool. The defendant has answered the appeal.
FACTUAL AND PROCEDURAL BACKGROUND
The property presently owned by Marcia Vanderpool is located at 3395 Highway 316 in Terrebonne Parish in Gray, Louisiana. Before Ms. Vanderpool and her former husband, Daniel Vanderpool, purchased the property in 1992, it was comprised of two separate, adjacent tracts of land, one of which has been called the “home site” throughout these proceedings and one of which has been called the “pasture site.” The home site was owned by Donald Waguespack, and the pasture site was owned by his mother-in-law, Cecilia Daigle.
On March 20, 1992, Donald Waguespack sold the home site to Daniel and Marcia Vanderpool by an act of cash sale for the price of $95,000.00. On that date, there were three buildings on the home site: the main house into which the Vanderpools moved after purchasing the property, a smaller house behind the main house which Cecilia Daigle occupied, and a small barn. Donald Waguespack testified at trial that he had given Ms. Daigle permission to put her house on his property in 1974. However, no declaration was ever recorded in the public records stating that she owned the house separate from the land, and when the land was sold to the Vander-pools, nothing was done to preserve Ms. Daigle’s separate ownership 13of the house. The act of sale transferred to the Vander-pools ownership of the land “[tjogether with all buildings and improvements thereon and all rights, ways, privileges and servitudes thereunto belonging or in anywise appertaining.”
*554 Donald Waguespack testified that he would not have sold his property to the Vanderpools unless Ms. Daigle could continue living in her house on the land for the rest of her life. He testified that he had an agreement to that effect with the Vanderpools and that it was a condition of the sale. Ms. Vanderpool admitted that she had a “gentleman’s agreement” with Mr. Waguespack to allow Ms. Daigle to continue living in the smaller house behind the main house. She stated that she felt sorry for Ms. Daigle because Ms. Daigle wanted to stay on the property and was afraid that after her daughter and son-in-law sold the property and moved away, she would be put in a rest home. Ms. Vander-pool testified that Ms. Daigle seemed very upset about the possibility of being put into a rest home, and out of kindness, she agreed to allow Ms. Daigle to continue to live on the property. Ms. Vanderpool denied that this agreement was a condition of Mr. Waguespack’s sale of the home site to her and her husband or that the sale of the home site was in any way contingent upon her allowing Ms. Daigle to remain on the property. The act of cash sale mentions nothing about such an agreement or lease in favor of Ms. Daigle, nor does it purport to create a usufruct, right of use, or right of habitation in her favor.
While Mr. Waguespack testified that Ms. Vanderpool agreed Ms. Daigle could remain living in the house for the rest of her life, Ms. Vanderpool testified that, at the time she purchased the home site from him, they did not agree on a particular period of time for Ms. Daigle to remain on |4the property. She stated her intent was to allow Ms. Daigle to stay there as long as she was able to care for herself.
On June 26, 1992, Ms. Daigle sold the pasture site to the Vanderpools by an act of cash sale for the price of $12,000.00. At the time of the sale, the pasture site was an undeveloped tract of pastureland located adjacent to the home site. It appears there may have been a dilapidated barn on the pasture site, but the sale included only the real estate and expressly excluded the improvements. Like the previous sale of the home site, the act of sale of the pasture site mentions nothing about a lease or agreement allowing Ms. Daigle to remain on the property as a condition of the sale, nor does it purport to create a usufruct, right of use, or right of habitation in her favor.
On the same day as the sale of the pasture site, Ms. Vanderpool and Ms. Dai-gle entered into a lease, whereby Ms. Dai-gle became the lessee of the house she was already occupying, plus an area around it of one hundred feet by one hundred feet. The lease was for a term of “ten (10) years with ten (10) ten (10) year options effective as of the date of the execution of this Lease,” and it provided for a payment of one dollar for the first ten-year term and one dollar for every renewal thereafter. At the trial Ms. Vanderpool testified that, at the time she signed the lease, she believed that she alone could exercise the renewal options. She also testified that she understood the lease to mean that Ms. Daigle could remain on the property for a period of ten years or until her death, whichever occurred first, and that if Ms. Daigle were still alive after ten years, then it would be Ms. Vanderpool’s decision whether to renew the lease.[2] Ms. Daigle testified she thought she |Bwas given the *555 right to stay in the house as long as she wished.
From 1992 until January 2002, Ms. Dai-gle has lived in the house behind the Van-derpools’ house. After Ms. Vanderpool divorced her husband and purchased his share of the property, she decided to sell the property, which includes both the home site and the pasture site. She testified, however, that none of the prospective buyers wanted to purchase the property, because Ms. Daigle refuses to vacate the premises. Ms. Vanderpool also testified that Ms. Daigle’s health has seriously deteriorated over the course of the past ten years and that visitors to Ms. Daigle’s home have interfered with Ms. Vander-pool’s use and enjoyment of her property.
On January 25, 2002, Ms. Vanderpool filed a petition in the City Court of Houma to evict Ms. Daigle from the house on the grounds of nonpayment of rent and an invalid lease. In response, Ms. Daigle filed a petition for declaratory judgment in the 32nd Judicial District Court for the Parish of Terrebonne, seeking a determination of the validity of her lease. Pursuant to an agreement reached between the parties, the district court judge rendered a consent judgment prohibiting Ms. Vander-pool from pursuing any matters in the eviction suit in the City Court of Houma for a period of ninety days. During that ninety-day period, a trial on the merits was held in the declaratory judgment action, and the judge ruled in favor of Ms. Vanderpool, finding that the lease would no longer be valid after June 26, 2002. From that judgment, Ms. Daigle appeals, urging the following assignments of error:
1. The district court erred in not recognizing that, at the time Mr. Waguespack sold the home site to the Vanderpools, he obtained a valid oral lease in favor of Ms. Daigle which would allow her to remain in her home until her death.
|fi2. The district court erred in not finding that the written lease was given for valid consideration other than cash, namely, in exchange or as a substitute for the prior oral lease.
3. The district court erred in not finding that the written lease gave Ms. Daigle the option to renew.
4. The district court erred in finding the written lease to be invalid after June 26, 2002.
LAW AND ANALYSIS
In its oral reasons for judgment, the trial court noted that there was no evidence that would indicate that the sale price in either sale is disproportionate to the value of the property, requiring additional consideration, such as the use by Ms. Daigle of the house on the property sold by Mr. Waguespack to Ms. Vander-pool. The court did not consider the parol evidence and noted the witnesses had contradictory memories and differing understandings of the oral discussions.
In her first assignment of error, Ms. Daigle argues the district court erred in not recognizing that, at the time Mr. Waguespack sold the home site to the Vanderpools, he obtained a valid oral lease in favor of Ms. Daigle which would allow her to remain in her home until her death.
While we agree with the manner in which the district court handled this case, we will briefly address Ms. Daigle’s argument concerning the existence of a valid oral lease. The essential elements of a lease are the thing, the price, and the consent. La. Civ.Code art. 2670. The price should be certain and determinate, and should consist of money. However, it may consist in a certain quantity of commodities, or even in a portion of the fruits *556 yielded by the thing leased. La. Civ.Code art. 2671.
The “gentleman’s agreement” which Ms. Vanderpool admitted she made with Mr. Waguespack when he sold the home site to her, could not have been a valid oral lease, because there was no price. There certainly |7was no price consisting of money. While the price need not be in money but may consist of other considerations, it must be readily ascertainable and determinable from facts or circumstances not within the control of the parties. Willis v. Ventrella, 95-1669 (La.App. 1st Cir.4/4/96), 674 So.2d 991, 994, writ denied, 96-1937 (La.11/1/96), 681 So.2d 1266. Ms. Daigle argues that the consideration for the lease was Mr. Wag-uespack’s sale of the home site to Ms. Vanderpool and the fact that he would not have sold the property unless Ms. Daigle could continue living there for the rest of her life. We reject this argument. If that was a condition of the Waguespack sale, then it should have been included in the act of sale. Moreover, a stipulation pour autrui should be in writing. Hertz Equipment Rental Corp. v. Homer Knost Construction Co., 273 So.2d 685, 688 (La.App. 1st Cir.1973); see also DePaul Hospital v. Mutual Life Insurance Co. of New York, 487 So.2d 143, 146 (La.App. 4th Cir.1986), writ denied, 492 So.2d 1218 (La.1986); Concept Design, Inc. v. J.J. Krebs & Sons, Inc., 96-1295 (La.App. 4th Cir.3/19/97), 692 So.2d 1203, 1206; Homer Nat. Bank v. Tri-District Development Corp., 534 So.2d 154, 157 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1236 (La.1989).[3] This would appear to be particularly true when the underlying agreement deals with real estate and is itself in writing. There was no such stipulation included in the Wag-uespack sale, and testimonial evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. La. Civ.Code art. 1848. Accordingly, there was no valid oral lease in favor of Ms. Daigle, because there was no price. Her first assignment of error is without merit. There is nothing in either act of sale concerning an oral agreement or lease |«in favor of Ms. Daigle, and neither act of sale purports to create any type of usufruct, right of use, or right of habitation in her favor. Therefore, the district court was only concerned with the rights Ms. Daigle might possess under the written lease she executed with Ms. Van-derpool on June 26,1992.
In her second assignment of error, Ms. Daigle asserts the district court erred in not finding that the written lease was given for valid consideration other than cash, namely, in exchange or as a substitute for the prior oral lease. As we find that there was no valid oral lease and that Ms. Vanderpool was not bound thereby, the written lease could not have been given in exchange or as a substitute for it, and Ms. Vanderpool’s non-existent obligations could not have served as consideration for the written lease. This assignment of error is without merit.
In her third and fourth assignments of error, Ms. Daigle argues the district court erred in not finding that the written lease gave her the option to renew and in finding the written lease to be invalid after June 26, 2002. Although the district court found the written lease to be valid with respect to its initial ten-year *557 term, the court found that, due to the lack of consideration and the testimony of Ms. Vanderpool concerning her intent when she signed the lease, it was invalid after June 26, 2002.
Under our law, consideration for a lease must be serious and must not be out of all proportion with the value of the thing. This is a general principle of the civil law, as old as the civil law itself, and it is different from the common law, under which the slightest consideration is sufficient to support any obligation. Murray v. Barnhart, 117 La. 1023, 1030, 42 So. 489, 491 (1906). The consideration of one dollar per year by itself is not a serious consideration as rent. Myers v. Burke, 189 So. 482, 483 (La.App. 1st Cir.1939). Therefore, the consideration of one dollar for a ten-year term 19is certainly not serious consideration, and the district court did not err in finding the lease to be invalid after June 26, 2002.
In her answer to Ms. Daigle’s appeal, Ms. Vanderpool asserts that the appeal is frivolous in nature and without any viable support under the law. She requests that sanctions be imposed against Ms. Daigle, and she seeks to be reimbursed for the attorney’s fees and costs she incurred in defending the appeal. We do not find Ms. Daigle’s appeal to be frivolous, and therefore, we decline to impose sanctions against her or award attorney’s fees to Ms. Vanderpool.
Ms. Vanderpool also asserts in her answer that she is entitled to rent in the amount of $600.00 per month from June 27, 2002, the date the lease became invalid, until the date of this court’s judgment. Ms. Vanderpool’s claim for rent is in the nature of a reconventional demand, which must be filed in the trial court and cannot be asserted for the first time on appeal. The claim is, therefore, denied.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. We deny Ms. Vanderpool’s demands for sanctions, attorney’s fees, and rent. All costs of this appeal are assessed to plaintiff, Cecilia Daigle.
AFFIRMED.

. The court found the lease to be gratuitous and lacking in consideration, but gave effect to the initial term of ten years, because of Ms. Vanderpool's admission. That particular ruling is not before us, because it was not appealed. Ms. Vanderpool acknowledges that, although she disagrees with the ruling, an appeal would be fruitless, because it became moot on June 26, 2002, when the ten-year term expired.

. The jurisprudential requirement of a writing has been questioned on the grounds that it is based on dicta in the supreme court case of Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572 (1971), and followed in Arrow Trucking Co. v. Continental Insurance Company, 465 So.2d 691, 698 (La.1985). See dicta in Wall v. First National Bank of Shreveport, 482 So.2d 865 (La.App. 2d Cir.1986).