In the Matter of Stratford Financial
Corporation, Debtor.

STRATFORD FINANCIAL CORPORA-
TION and the Official Creditors'
Committee, Appellants,

v.

FINEX CORPORATION, Appellee.

No. 43, Docket 30485.

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1966.

Decided Oct. 27, 1966.

Julius J. Abeson, New York City
(Hahn, Hessen, Margolis & Ryan, Harry
A. Margolis, New York City, on the
brief), for appellants.

Max Block, Jr., New York City (Stan-
ley B. Hendler, New York City, on the
brief) for appellee.

Before SMITH, HAYS and FEIN-
BERG, Circuit Judges.

FEINBERG, Circuit Judge:

The question on this appeal is whether
we should overturn an order of Referee
Edward J. Ryan, affirmed by the United
States District Court for the Southern
District of New York, Irving Ben Coop-
er, J.; the order dismissed the petition
of Stratford Financial Corporation
("Stratford"), a Chapter XI debtor-in-
possession, to compel Finex Corporation
("Finex") to turn over $25,000. For the
reasons set forth below, we affirm.

The $25,000 represents the proceeds
of five checks payable to Stratford by
Seefeld Hermanos, S.A. ("Seefeld"), an
Argentinean firm. Stratford acquired
the checks in its lending business; it had
made a loan of $50,000 to Seefeld evi-
denced by ten notes of $5,000 each, pay-
able at monthly intervals. Thereafter,
in April 1963, Stratford entered into a
letter agreement with Finex whereby ·
Finex was purportedly given an interest
in the Seefeld notes in return for an ad-
vance to Stratford of $40,000. Strat-
ford's Chapter XI petition was filed in

October 1963, before which date Seefeld had already paid a few of the notes to Stratford. Thereafter, in succeeding months, Seefeld paid Stratford the $5,-000 due on each of five notes; each time, Adolf Sonnenschein, Stratford's president, endorsed Seefeld's check for $5,000 and delivered it to Finex. Appellants debtor-in-possession and the creditors' committee claim that this was improper and seek the return of $25,000. The significant issue litigated before the referee, reviewed by the district court, raised here is whether the arrangement between Stratford and Finex created a trust for the benefit of Finex.

It may be conceded that if the arrangement between Stratford and Finex was simply a loan, then Stratford's president had no right to endorse over to Finex the five checks from Seefeld after the Chapter XI petition was filed. The letter, reproduced below,[1] purported to confirm that (1) Finex would immediately turn over $40,000 to Stratford, (2) Finex would have "a 100% interest" in the first eight Seefeld notes to mature, (3) Stratford would pay Finex the principal within five days of each note's maturity or payment by Seefeld, (4) Finex would be paid $7,000 within five days of the first $5,000 note's maturity, only $3,000 on the last note's due date, and $5,000 on the six notes in between, (5) after January 5, 1964, Stratford would pay Finex fifteen per cent interest on the cash balance due Finex, and (6) Stratford guaranteed full

1.  April 8, 1963.
    Finex Corporation
    19 West 44th Street
    New York, New York
    Gentlemen:
    We advised you that we advanced to our client, Seefeld Hnos, S.A.C.I.A. the sum of $50,000.00 as evidenced by a series of notes, each in the sum of $5,-000.00 and which are due for payment at the rate of $5,000.00 monthly commencing with August 5, 1963.
    This will confirm our understanding that you are to turn over to us immediately the sum of $40,000.00, and in consideration thereof, you are to receive a 100% interest in and to the first 8 notes totalling $40,000.00, maturing monthly from August 5, 1963 and until March 5, 1964. You shall have a vested interest in and to the remaining 2 notes, insofar as your compensation, as hereinafter provided, shall be concerned. We do herewith guarantee to you the full repayment of the said notes plus your charges as hereinafter provided. Payments of principal shall be made to you within 5 days after payment is made by the borrowers, or is due, until you have been fully repaid for all your principal due to you hereunder. Except that you shall receive a payment of $7,000.00 against principal on or before August 10, 1963. Payment on the March 5, 1964 note shall be reduced to $3,000.00 plus all interest accrued and payable as per this agreement.
    As compensation to you for your advance as herein mentioned, we shall pay to you, within 10 days after Jan. 5, 1964, and monthly thereafter together with payment against principal, interest at the rate of 15% per annum computed on the daily cash balances due to you by virtue hereof.
    The loan shall be conducted solely in our name without any charge for any administrative, clerical or other expenses. However, we shall hold all notes pertaining to this transaction 'in trust' for our mutual benefit. We shall not, without your prior written consent, modify the terms of our agreement with the borrower, nor waive or release any rights which we may have against them.
    You shall have the right to have access at all reasonable times to our books and records pertaining to this transaction.
    This agreement cannot be changed, either in whole or in part, except with the written consent of both of us and shall be binding upon both of us, including our heirs, executors, administrators and assigns.
    Please indicate your acceptance and approval forthwith by initialing the bottom of the first page hereof and signing the second page where provided below, and thereupon, this letter, together with your payment to us of the sum of $40,000.00 shall constitute a binding agreement between us.
    Yours very truly,
    STRATFORD FINANCIAL CORPORATION
    By: ......................
    A. Sonnenschein, President
    AS/ls
    Read, accepted and agreed to:
    FINEX CORPORATION

repayment of the notes and of Finex's charges. Finally, the letter stated:

The loan shall be conducted solely in our name * * *. However, we shall hold all notes pertaining to this transaction 'in trust' for our mutual benefit.

Appellants argue that the words "in trust" in the letter agreement are not dispositive. They point to the following as requiring reversal of the finding that there was, in fact, a trust: Stratford's promise to pay interest, its guarantee of payment of principal, its failure to segregate the Seefeld notes (the alleged trust res) or indicate on them in any way that they were held in trust, and Stratford's commingling in its general checking account, prior to the filing of the Chapter XI petition, of payments it received on the Seefeld notes.

■ The formation of a trust relationship is dependent upon the intention of the parties, which, if not clearly indicated by the language of the parties, is to be inferred from all the circumstances. 1 Scott, Trusts § 12.2 (2d ed. 1956). We therefore recite some of the facts that led the referee to conclude that a trust, not a debtor-creditor, relationship was created: Stratford and Finex had entered into two prior similar agreements, each using the words "in trust"; no lawyers were used in drawing up these agreements between Stratford and Finex; they were prepared by Stratford, which had long experience in the financing business; Finex, with no such background, relied on Stratford to draw the documents to create and carry out a trust; and the commingling of the proceeds of the first few Seefeld notes in Stratford's general checking account was very brief. Judge Cooper additionally noted that Finex had no knowledge of Stratford's failure to segregate.

To these facts negating a simple debtor-creditor relationship and supporting a trust finding should be added the following: Finex's president testified that Sonnenschein had promised to keep the notes "separately from any unsecured deals"; there was no commingling of the five Seefeld checks in issue because they were physically handed over, duly endorsed, to Finex; the absence of any promissory note from Stratford in three transactions totalling substantial sums between Finex and Stratford; even though Stratford was in financial difficulty, it always remitted the proceeds of Seefeld checks promptly to Finex; moreover, it never attempted to use the remaining notes for its own purposes, although obviously badly pressed for cash.

■ All of this adds up to strong support for the finding of a trust by the referee, who alone had the opportunity to hear the testimony of the parties to the transaction and assess their credibility. Appellants argue that federal bankruptcy courts should be wary of recognizing trusts since they, in effect, produce preferences, and that those who rely on a trust relationship have the clear burden of proving it. It is not necessary to decide whether these general propositions are completely accurate as applied to these facts. Even assuming that they are, there is present here more than sufficient evidence for the trust finding to withstand an attack as "clearly erroneous," see In the Matter of Chicago Express, Inc., 222 F.Supp. 566, 572 (S.D. N.Y.1963), aff'd, 332 F.2d 276 (2d Cir.), cert. denied, Pennsylvania R. Co. v. Chicago Express, Inc., 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1964), particularly when appellants seek to overturn both the referee's finding and the district court's affirmance. Rader v. Lichtenthal, 306 F.2d 195, 197 (2d Cir. 1962); see In the Matter of Melnick, 360 F.2d 918, 920 (2d Cir. 1966) (per curiam).

Accordingly, the judgment of the district court is affirmed.