444 So.2d 193 (1983)
TEACHERS' RETIREMENT SYSTEM OF LOUISIANA, et al.
v.
LOUISIANA STATE EMPLOYEES RETIREMENT SYSTEM.
No. 83 CA 0265.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
Rehearing Denied January 19, 1984.
Writ Granted April 13, 1984.
Frank Middleton, Baton Rouge, for plaintiffs-appellants Teachers' Retirement System of Louisiana, Great American Management & Inv., Lomas & Nettleton Co., Constantin Foundation, and Vista Mortg. & Realty Inc.
Carlos G. Spaht, Baton Rouge, for defendant-appellee La. State Employees Retirement System.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
The issue in this complicated financial case is whether or not plaintiffs have a right of action against defendant. The pertinent *194 facts giving rise to the litigation are as follows.
Harry J. Hart, representing West Side Twelve Corporation (West Side), sought financing for acquisition and development of land in West Baton Rouge and Pointe Coupee Parishes. In July of 1973 Mr. Hart approached Great American Mortgage Investors (Great American or GAMI), concerning a loan to finance his project. Great American was interested in providing interim financing but required Hart to obtain a "take out commitment" from another lender for permanent financing. Hart successfully sought this commitment from Louisiana State Employees' Retirement System (Employees').
On August 23, 1973, West Side and Great American executed a loan agreement, the principal sum of the loan not to exceed $13,500,000. The loan was secured by the pledge of a collateral mortgage note in the amount of $20,000,000, which in turn was secured by the collateral mortgage. On the same day Great American contracted with several other parties in a "Participation Agreement." The agreement involved the following parties: Great American, Justice Mortgage Investors (Justice), The Lomas & Nettleton Company (Lomas), The Constantin Foundation (Constantin), Teachers Retirement System of Louisiana (Teachers), and Cobbs, Allen & Wall Mortgage Company. The agreement referred to the first mortgage loan commitment by Employees' to West Side and a prior "Agreement for a Land Acquisition and Development Loan" between Great American and West Side. The participation agreement stated each of the parties listed therein would participate in the loan from Great American to West Side in varying proportionate amounts.
On August 24, 1973, Great American, Employees' and West Side entered into a "Tri-Party Agreement." This document referred to the interim loan made by Great American to West Side and the permanent financing promised by Employees' to West Side. Employees' then agreed, according to the terms and conditions of the agreement, to "... pay INTERIM LENDER the unpaid principal balance of funds it has advanced to BORROWER in an amount not to exceed THIRTEEN MILLION FIVE HUNDRED THOUSAND AND NO/100 ($13,500,000.00) DOLLARS." Such an agreement is commonly referred to as a "take-out" or a "buy-out" agreement. Employees' received a fee of $405,000 for this commitment.
Sometime prior to October 1974, during the interim financing period (which was to last until August 23, 1975), West Side defaulted on the loan. Thereafter, pursuant to the Tri-Party Agreement, Great American notified Employees' of the default. In a letter dated October 7, 1974, Employees' informed Great American it did not desire to purchase Great American's rights to the loan, due to West Side's default. On July 2, 1975, Great American made written request upon Employees' for Employees' to "take them out" of the loan. Employees' refused.[1] On March 25, 1977, Great American filed for an arrangement under Chapter XI of the Bankruptcy Act of 1898. In that proceeding the United States District Court for the Northern District of Georgia decreed that Great American was authorized to prosecute its claim against Employees'. An "Agreement Regarding Prosecution of This Claim" was entered into by parties to the Participation Agreement. The present suit was filed by these parties[2] against Employees' in October of *195 1979, alleging Employees' owed the participants $13,429,372.44, less certain credits enumerated in the petition.
Employees' responded to the suit by filing a peremptory exception raising the objections of no right of action, no cause of action and prescription. The trial court sustained the exception based on the no right of action claim as to all plaintiffs but Great American. The no cause of action and the prescription claims were overruled and have not been raised on appeal. Teachers, Constantin, Lomas and Vista (formerly Justice) have appealed.
Concerning the no right of action objection, the court based its conclusion on two grounds. First, it held plaintiffs were not parties to the Tri-Party Agreement, nor were they third party beneficiaries to it; therefore, they had no right to sue to enforce the contract between Employees' and Great American.
Appellants contend the court erred in failing to find them third-party beneficiaries of the Tri-Party Agreement. The basis of the concept of a stipulation made in favor of a third party is found in La.Civ. Code art. 1890 which reads as follows:
"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."
Courts have held consistently that in order to find a "stipulation pour autrui" the provision must be in writing and must "clearly reveal" or "clearly manifest" the intent of the contracting parties was to provide a benefit to a third party. See Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572 (1971); Hertz Equip. Rent. Corp. v. Homer Knost Const. Co., Inc., 273 So.2d 685 (La.App. 1st Cir.1973).
An examination of the Tri-Party Agreement fails to show a clear intent to bestow a benefit upon the parties to the Participation Agreement. The gist of the Tri-Party Agreement has been stated above. The only mention of the participants is found in a paragraph entitled "Restriction on Assignment of Note" and reads as follows:
"Notwithstanding the provisions of this paragraph, INTERIM LENDER may sell participation interests in the loan and the collateral therefor to such other lenders as INTERIM LENDER may select, but INTERIM LENDER shall not thereby be relieved of any of its obligations hereunder."
The trial court commented this language did not show an intent to bestow a benefit upon the participants, but "... merely reflected an intent that the signatories [of the Tri-Party Agreement] remain bound to each other regardless of participation." We agree with this conclusion. This language does not show in any way that Employees' or Great American intended to confer any benefit upon the participants. The fact that a third party may incidentally derive a benefit from a contract does not in and of itself mean the contract contains a "stipulation pour autrui." See New Orleans Public Service v. United Gas Pipe Line, 690 F.2d 1203 (5th Cir.1982), opinion withdrawn in part, 694 F.2d 421 (5th Cir.1982).
Professor J. Denson Smith discussed the "incidental benefit" aspect of contracts in his article, Stipulations Pour Autrui, at 11 TULANE L.REV. 18 (1936). At p. 28 Professor Smith wrote:
"But it is also true that not every promise, performance of which may be advantageous to a third person, will create in him an actionable right. The problem is to separate the cases where an advantage has been stipulated from those where the advantage relied upon is merely an incident of the contract between the parties."
Undoubtedly, the fact that Great American was assured Employees' would "buy it out," was a benefit that might be advantageous to the participants, but without finding a clear intent to bestow such a *196 benefit directly upon the participants, we cannot conclude they were third-party beneficiaries to the Tri-Party Agreement.
Appellants contend that in addition to their right of action as third party beneficiaries, they also have a right of action based upon their being undisclosed principals to the Tri-Party Agreement. In other words, they argue when Great American contracted with Employees', Great American was acting as an agent for them (as well as acting in its own behalf). As such, they contend they have the right to sue Employees' on the contract.
There is no question but that the Participation Agreement creates a principal-agent relationship as to matters concerning the loan to West Side. The following language indicates this is so:
"(5) The original Loan Agreement dated the 23rd day of August, 1973, and all collateral security therefor shall be held by GAMI for the benefit of the participants. GAMI shall make advances and carry out the provisions of the Loan Agreement, exercise all rights and privileges accruing by reasons of the provisions thereof and all collateral security therefor, and enforce all rights thereunder, all in the exercise of its business judgment, subject to the provisions hereinafter contained. GAMI shall not renew or extend the maturity date of the loan without prior written consent of all participants." (Emphasis added.)
However, we are unimpressed by this argument. It seems, in essence, a mere rewording of the argument concerning the third party beneficiary concept. The Louisiana Civil Code deals extensively with the subject of mandate in articles 2985 to 3034. Nowhere in these articles do we find authority for an undisclosed principal suing a third person on a contract made by an agent. In fact, "undisclosed agency" is not recognized at all by the code. The jurisprudence is remarkably sparse on this subject. Appellants rely heavily on the case of Childers v. Police Jury of Parish of Ouachita, 9 La.App. 490, 121 So. 248 (2d Cir. 1928), in which an undisclosed principal was allowed to enforce a contract made by his agent with the police jury. The court cited several common law cases as well as several Louisiana cases which had held the undisclosed principal may be sued on such a contract. The court then reasoned the opposite result should also be allowed, i.e., the undisclosed principal should be allowed to sue the third party. The court therefore held the principal had a right of action against the third party, as long as the third person would not be injured by the principal (as opposed to the agent) suing him. A suit by an undisclosed principal was also allowed in DeSoto Building Co., Ltd. v. Kohnstamm, Orleans No. 7627, 3 Pelt. 54 (La.App.1919).
However, we are not convinced of the correctness of these older appellate decisions. A comment, Juridical Basis of PrincipalThird Party Liability in Louisiana Undisclosed Agency Cases, 8 LA.L. REV. 409 (1948), addresses the situation at hand. The author there notes that under French law, the question of the liability between the principal and the third party is resolved according to whether or not the agent represented himself as acting for another. If he so represents, the situation is termed mandate and there is liability between the principal and the third party. If there is no representation, the situation is one of commission or prete-nom and there is no liability between the third party and the principal.
In Planiol's Civil Law Treatise (Traite elementaire de droit civil), he too distinguishes between "mandate" and "commission." In the former, the principal employs an intermediary and this fact is known by all. In the latter, the identity of the principal is insignificant in that the agent guarantees his personal responsibility to the third person. In this case the intermediary acts as a "prete-nom." More specifically, Planiol states:
"Third persons do not know, or are considered as not knowing anyone but the prete-nom: it is he who is their creditor, who is their debtor, who is the proprietor of the property put in his name. *197 They have therefore the right to sue him and they can be sued by him; and furthermore he is the only one who can sue or be sued. The contract between him and his principal is as to them "res inter alios acta"; the act should be taken for what it is in appearance, because third persons have no right to criticize it...." (Citations omitted.) 2 Planiol Civil Treatise, pt. 2, no. 2271 at 303 (11th Ed. La. St.L.Inst. transl. 1959).
We conclude that under the civil law tradition, Great American was a "pretenom" who acted in its own behalf as opposed to representing itself to be acting for the other principals. As such, only Great American has a right of action against West Side.
In Turner v. Snype, 162 La. 117, 110 So. 109 (1926), the Supreme Court declined to allow an undisclosed principal to sue a third party on a contract. A real estate agent, acting for his undisclosed client, entered a purchase agreement with the owner of certain property. When the sale failed to materialize the client filed suit against the owner. The court concluded the contract was only between the agent and the owner and therefore the client could not enforce it unless the right had been assigned to him. We follow the reasoning of this case and conclude that in the present case, the appellant parties to the Participation Agreement have no right of action (as alleged undisclosed principals) against Employees'.
Finally, appellants contend in their brief they have a right of action against Employees' because the Participation Agreement makes them partial assignees of all "... security arrangements entered into by Great American for their benefit, including all rights created by the `Tri-Party Agreement.' " The language relied upon by appellants as granting their partial assignment is found in the Participation Agreement and reads as follows:
"Upon the payment by the Louisiana State Employees' Retirement System for the repayment of the principal of the loan or upon the repayment to GAMI of the principal of the loan from any other source whatsoever, GAMI shall forthwith pay to each participant the amount of its Proportionate Share of such principal repayment."
We do not find this language to create an assignment. Assignment is defined by Black's Law Dictionary (1968) as, "A transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate, or right therein." The language above does not transfer to the participants any right in the Tri-Party Agreement but merely reiterates or confirms the rights that flow from the Participation Agreement. In the latter agreement they promised to participate in the loan money to West Side. The language above states simply that when Great American (GAMI) receives any repayments of the loan, Great American will in turn pay the various participants their proportionate share of the repayment. We find no validity to the argument that this language is evidence of an assignment.
The trial court's second basis for sustaining the no right of action claim was that even if the plaintiffs had a right of action at one time, the right should have been asserted in Great American's bankruptcy proceedings. Because we have concluded plaintiffs have never had a right of action against Employees', we find it unnecessary to address this alternate argument.
For these reasons, the judgment of the trial court, sustaining defendant's objection of no right of action and dismissing plaintiffs' case as to all plaintiffs except Great American, is affirmed. Costs are to be paid by appellants.
AFFIRMED.
NOTES
[1] In June of 1976 Great American filed suit against West Side in the 18th Judicial District Court based on the loan agreement. Judgment was rendered in its favor for $13,407,261.16, plus other amounts for taxes and attorney fees. Further, Great American was recognized as mortgagee of the real estate located in West Baton Rouge and Pointe Coupee parishes. A Writ of Fi.Fa. was issued, the property was seized and Great American purchased the property at a sheriff's sale.
[2] Cobbs, Allen and Wall Mortgage Company was the only participant who did not file suit. By the time suit was filed some of the original corporations had been succeeded by other entities. Great American Mortgage Investors had become Great American Management and Investment, Inc. and Justice had become Metroplex Realty Trust. At some later point Metroplex became Vista Mortgage and Realty, Inc.