456 So.2d 594 (1984)
TEACHERS' RETIREMENT SYSTEM OF LOUISIANA et al.
v.
LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM.
No. 84-C-0344.
Supreme Court of Louisiana.
September 10, 1984.
*595 Frank W. Middleton, Jr., J. Ashley Moore, Taylor, Porter, Brooks & Phillips, Baton Rouge, for plaintiffs-applicants.
Carlos G. Spaht, Lee C. Kantrow, David S. Rubin, Lois E. Hawkins, Kantrow, Spaht, Weaver & Walter, Baton Rouge, for defendant-respondent.
CALOGERO, Justice.
Plaintiff interim lenders[1] assert a cause of action against a permanent lender[2] seeking damages which were allegedly sustained when the permanent lender refused to honor a contractual "take out commitment" after the borrower[3] defaulted on the interim loan. One plaintiff, GAMI, was the "lead" interim lender. The other plaintiffs were "participants" in the interim loan.[4] With regard to these participant interim lenders (VISTA, LOMAS, TEACHERS and CONSTANTIN), the courts below have ruled that they have no right of action which they may assert against the "permanent lender" (EMPLOYEES'). 444 So.2d 193 (La.App. 1st Cir.1983). That ruling prompted our granting writs, and presents the narrow legal question for our consideration in this case.
The complicated financial arrangements which gave rise to this litigation were ably and thoroughly detailed in the Court of Appeal opinion.[5] For the following reasons, *596 we reverse the Court of Appeal's affirmance of the trial court's granting the exception of no right of action, and we remand the case to the trial court for further proceedings.[6]
Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. La.C.C.P. art. 865. Hero Land Co. v. Texaco, Inc., 310 So.2d 93 at 96 (La.1975); Haskins v. Clary, 346 So.2d 193, 195 (La.1977); Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297, 302 (La.1973). Articles of the Code of Civil Procedure are to be construed liberally and with due regard for the fact that forms of procedure implement the substantive law and are not an end in themselves. La.C.C.P. art. 5051; Lambert v. Donald G. Lambert Construction Co., 370 So.2d 1254, 1255 (La.1979). An earlier Court stated it well: "Pleading is the `handmaid rather than the mistress' of justice." Erath Sugar Company v. Broussard, 240 La. 949, 125 So.2d 776, 777 (1961). When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Henson v. St. Paul Fire and Marine Ins. Co., 363 So.2d 711 (La.1978); Haskins v. Clary, supra; Eschete v. City of New Orleans, 258 La. 133, 134, 245 So.2d 383 (1971); Erath Sugar Company v. Broussard, supra; LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727 (1966).
La.C.C.P. art. 681 provides that "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." That article is the basis for the peremptory exception of no right of action. La.C.C.P. art. 681. Official Revision Comment (b).
The peremptory exception of no right of action raises, then, the question of whether the plaintiff has any interest in judicially enforcing the right asserted.[7]Lambert, supra. The exception of no right of action is "a threshold device for terminating a suit brought by one without legal interest to assert it." Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 at 334 (1972), quoting with approval Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir.1967). See also Louisiana Law of Exceptions, 22 Loy.L.Rev. 90 (1975-76).
In Bielkiewicz, Judge Tate, then a judge of the Louisiana Court of Appeal, Third Circuit, explained the purpose of the exception of no right of action, later approved in Babineaux, 262 So.2d at 334.
The want of interest raised by the exception relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the law grants the cause of action sought to be asserted by the suit, with the factual evidence admissible being restricted as to whether this particular plaintiff does or does not fall within the *597 general class having legal interest to sue upon the cause of action asserted.
* * * * * *
In short, the objection of no right of action raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation, assuming (for the purpose of deciding the exception) that a valid cause of action is pleaded by the petition. LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727. (Emphasis in original)
Evidence may be received under the exception of no right of action for the purpose of showing that the plaintiff does not possess the right he claims or that the right does not exist. Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874 at 875 (La.1974) (quoting Roy O. Martin Lumber Co. v. St. Denis Securities Co., 225 La. 51, 72 So.2d 257 (1954)).
We were tempted initially to reverse summarily the lower courts' granting defendant's exception of no right of action. Nonetheless we simply granted the writ because we thought that there might have been some additional evidence offered below, which would contribute to a better understanding of the intention of the parties concerning their relationships. After granting the application and reviewing the record, we have found no such additional evidence in the record at this stage of the proceedings.[8] There apparently was no testimony taken in the district court relative to the intent and knowledge of the several parties to the various agreements. All that appears of record so far are the numerous documents and contracts drawn up by and among the various parties, documents which do not establish conclusively the exact legal and contractual relationships between the interim lead lender, the interim participating lenders and the permanent lender. Until those legal relationships are determined and the status of each of the parties to this series of complex financial arrangements established after presentation of all evidence, it would be precipitous to dismiss any of the parties. Where doubt exists regarding the appropriateness of an objection of no right of action, it is to be resolved in favor of the plaintiffs. 22 Loy.L.Rev. 114 (citing Babineaux).[9]
This is a case where a trial on the merits will likely elicit evidence of the intent and knowledge of the parties to the various agreements concerning their respective relationships one with another, and may help to clarify and resolve the complicated legal issues at the heart of the present controversy. Although other courts in the country have wrestled with the question of the legal and contractual relationship of lead interim lenders, participating interim lenders and permanent lenders,[10] this question is new to Louisiana and has not yet been fully explored against the backdrop of our civilian tradition and within the context of an adversarial hearing on the merits.
In this case, the record at this stage of the proceedings suggests several alternative and disputed legal relationships.[11] *598 A determination of the precise relationship between the interim lead/interim participating lenders and the permanent lender will depend on a judicial interpretation of the various contracts. This judicial interpretation of the contracts, in turn, may depend on factual conclusions concerning the knowledge, expectations and intentions of the parties to those various contracts.[12] Testimony in that regard might indeed affect how a court would read the contracts and how it would solve the legal questions presented. As noted earlier, there has been no testimony to date on the parties' knowledge, their expectations and/or their intentions. Since we expect that there will be testimony in that regard at trial and since doubts are to be resolved in favor of denying a peremptory exception and affording litigants their day in court, we will not sustain the peremptory exception of no right of action at this early stage of the proceedings. We cannot say at this point in the litigation that the plaintiffs, dismissed by the lower courts on the no right of action exception, have no legal interest in the subject matter, or in judicially enforcing the right asserted in the litigation. Where the court determines that evidence adduced at trial will be needed or helpful in rendering judgment on the exception, the exception of no right of action can be referred to the merits. 22 Loy.L.Rev. at 97.
Finally, the peremptory exception may be pleaded at any stage of the proceedings. It may be filed in the trial court prior to the submission of the case for a decision, and likewise in the appellate court if proof of the ground of the exception appears of record. The peremptory exception may even be noticed by either the trial or appellate court on its own motion. La.C. C.P. arts. 927, 928, 2163. Lambert, 370 So.2d 1254. Accordingly, the exception of no right of action may be raised again at or after trial, after being earlier denied. See Adam v. Great Lakes Dredge and Dock Company et al, 273 So.2d 60 (La.App. 4th Cir.1973), wherein the court found no error in the trial court's permitting the filing of a second exception of no right of action after the first had been dismissed.
The court below acted precipitously in striking the right of action of all plaintiffs but GAMI under the pleadings and evidence presented. We will therefore remand the case to the trial court for further proceedings.

Decree
For the foregoing reasons, the trial court's judgment sustaining defendant's exception of no right of action and dismissing plaintiffs' petition and the Court of Appeal's affirming that judgment are reversed; the exception of no right of action is overruled and the case is remanded to the trial court for further proceedings.
REVERSED; REMANDED.
WATSON, J., concurs but would simply refer the exception to the merits rather than dismissing it at this juncture.
NOTES
[1] Vista Mortgage and Realty, Inc. (VISTA, successor in interest to Metroplex Realty Trust and its predecessor Justice Mortgage Investors); Lomas and Nettleton Company (LOMAS); Teachers' Retirement System of Louisiana (TEACHERS); The Constantin Foundation (CONSTANTIN); and Great American Management and Investment, Inc. (GAMI, successor in interest to Great American Mortgage Investors).
[2] Louisiana State Employees' Retirement System (EMPLOYEES).
[3] West Side Twelve Corporation; Harry J. Hart, president (WEST SIDE).
[4] Cobbs, Allen and Hall Mortgage Company, Inc. (COBBS), originally a participant, withdrew before the Tri-Party Agreement was signed by GAMI, EMPLOYEES and WESTSIDE. GAMI retained COBBS' position, so that at the time the financial deal was confected, the participation in the 13.5 million dollar loan for each of the interim lenders was as follows: GAMI with 4.5 million; VISTA with 1.5 million; LOMAS with 2.0 million; TEACHERS with 4.5 million; and CONSTANTIN with 1.0 million.
[5] In pertinent part, the First Circuit Court of Appeal stated at 444 So.2d 194-95:

Harry J. Hart, representing West Side Twelve Corporation (West Side) sought financing for acquisition and development of land in West Baton Rouge and Pointe Coupee Parishes. In July of 1973 Mr. Hart approached Great American Mortgage Investors (Great American or GAMI), concerning a loan to finance his project. Great American was interested in providing interim financing but required Hart to obtain a "take out commitment" from another lender for permanent financing. Hart successfully sought this commitment from Louisiana State Employees' Retirement System (Employees').
On August 23, 1973, West Side and Great American executed a loan agreement, the principal sum of the loan not to exceed $ 13,500,000.... On the same day Great American contracted with several other parties in a "Participation Agreement," ... [which] referred to the first mortgage loan commitment by Employees' to West Side and a prior "Agreement for a Land Acquisition and Development Loan" between Great American and West Side.
* * * * * *
On August 24, 1973, Great American, Employees' and West Side entered into a "Tri-Party Agreement" [which] referred to the interim loan made by Great American to West Side and the permanent financing promised by Employees' to West Side. Employees' then agreed, according to the terms and conditions of the agreement, to "... pay INTERIM LENDER the unpaid principal balance of funds it has advanced to BORROWER in an amount not to exceed THIRTEEN MILLION FIVE HUNDRED THOUSAND AND NO/100 ($13,500,000.00) DOLLARS." Such an agreement is commonly referred to as a "take-out" or a "buy-out" agreement. Employees' received a fee of $405,000 for this commitment.
Sometime prior to October 1974, during the interim financing period (which was to last until August 23, 1975), West Side defaulted on the loan.... On July 2, 1975, Great American made written request upon Employees' for Employees' to "take them out" of the loan. Employees' refused. On March 25, 1977, Great American filed for an arrangement under Chapter XI of the Bankruptcy Act.... An "Agreement Regarding Prosecution of this Claim" was entered into by parties to the Participation Agreement. The present suit was filed by these parties against Employees' in October of 1979 alleging Employees' owed the participants $13,429,372.44, less certain credits enumerated in the petition. (footnotes omitted) (emphasis provided)
[6] The defendant also filed peremptory exceptions of no cause of action and prescription, which were overruled. There has been no appeal from that judgment.
[7] The exception of no right of action is, of course, to be distinguished from the exception of no cause of action. See Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874 (La. 1974); Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).
[8] Although suit was filed in 1979, it is still in its preliminary stages.
[9] Babineaux involved a wrongful death action brought by a single plaintiff individually and as representative of four minor children. Because the legitimate or illegitimate status of one child could not be determined on the record presented, this Court found that the trial court had acted precipitously in granting the defendant's exception and in striking the child's right of action under the pleadings and evidence presented to it. We said at 262 So.2d at 337: "We can make no final determination of his status on the record before us, and it may be that it can be determined only through other legal proceedings."
[10] See generally Stratford Financial Corporation v. Finex Corp., 367 F.2d 569 (2d Cir.1966); Girard Bank v. John Hancock Mutual Insurance Co., 524 F.Supp. 884 (E.D.Pa.1981); In Re Alda Commercial Corporation, 327 F.Supp. 1315 (S.D. N.Y.1971); Southern National Bank of Houston, Texas v. Tri-Financial Corporation, 317 F.Supp. 1173 (S.D.Tex.1970); In Re Yale Express System, Inc., 245 F.Supp. 790 (S.D.N.Y.1965).
[11] Plaintiffs' counsel argues this case under several alternative theories, including agency, assignment, stipulation pour autrui. EMPLOYEES' counsel, on the other hand, contends that the plaintiff participating lenders were simply unsecured creditors of GAMI whose forum for relief was the federal bankruptcy proceeding.
[12] We note that in Franklin v. Commissioner of Internal Revenue, 683 F.2d 125 (5th Cir.1982), Judge Alvin Rubin, as organ of the United States Fifth Circuit Court of Appeals considered the legal characterization of a participation agreement in the context of a federal tax question and decided, of the six possible relationships between lead and participating lenders ("debtor-creditor, assignment, tenancy in common, joint venture, agency, and trust") that "[u]nder the terms of the participation agreement in this case, however, the participant is an assignee of a percentage interest of the loan and the lead bank is the agent for servicing the entire loan." (emphasis provided) 683 F.2d at 128, note 9.