534 So.2d 154 (1988)
HOMER NATIONAL BANK, Plaintiff-Appellee,
v.
TRI-DISTRICT DEVELOPMENT COPORATION, Defendant-Appellant.
No. 87-924.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1988.
Writ Denied January 20, 1989.
Gist, Methvin, Hughes & Munsterman, James B. Reichman, Alexandria, plaintiff-appellee.
Garrett, Ryland & Nunnally, Charles Nunnally, Alexandria, defendant-appellant.
Before GUIDRY, STOKER and KING, JJ.
GUIDRY, Judge.
Plaintiff, Homer National Bank (hereafter Homer), filed this suit against defendant, Tri-District Development Corporation (hereafter Tri-District), seeking a money judgment or, in the alternative, an order commanding Tri-District to specifically perform its alleged obligation to make a permanent financing loan to D'Arbonne Lake Lodge, Inc., James L. Long and Jake *155 Long (hereafter collectively D Arbonne).[1] Tri-District responded to Homer's petition by filing an exception of no cause of action. The trial court overruled the exception and subsequently, upon Tri-District's failure to further respond to plaintiff's petition, a judgment, on confirmation of default, was rendered in favor of Homer against Tri-District in the sum of $145,000.00 plus interest and costs. Tri-District has appealed from that judgment urging that the trial court erred when it overruled its exception of no cause of action. In the alternative, Tri-District contends that the default judgment should be set aside as invalid because it was not supported by sufficient evidence.
We will first consider appellant's contention that Homer's petition fails to state a cause of action against Tri-District.[2]
The exception of no cause of action questions the sufficiency in law of plaintiff's petition, i.e., whether, as a matter of law, plaintiff has stated a justiciable cause against the defendant. In determining the issue raised by this exception, all well pleaded facts in the petition and annexed documents are accepted as true. Darville v. Texaco, Inc., AA1 So.2d 473, reconsideration denied, 448 So.2d 1302 (La.1984); Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984). On trial of a peremptory exception, the pleadings are construed reasonably to the end that, if possible, the petition will be maintained so as to afford the litigant his day in court. Teachers' Retirement System of Louisiana, et al v. Louisiana State Employees Retirement System, 456 So.2d 594 (La. 1984).
In its petition, Homer sets forth the following well pleaded facts.
In November 1984, D'Arbonne made application to Homer for a loan in the amount of $150,000.00. Homer informed D'Arbonne that an interim construction loan would not be made until D'Arbonne secured a commitment for permanent financing. D'Arbonne applied to Tri-District for a permanent financing loan. Tri-District approved a permanent financing loan to D'Arbonne and Homer was so advised.[3] Subsequently, Homer assured itself that the mortgages for the permanent financing had been accepted by Tri-District and recorded in the public records of Union Parish, whereupon it advanced D'Arbonne interim funding in the amount of $50,000.00 on April 4, 1985, and in the amount of $95,000.00 on April 24, 1985.[4]
On April 19, 1985, Homer was assured by a representative of Tri-District that the permanent financing loan would be funded within thirty days. Again, on May 24, 1985, Homer was assured by representatives of Tri-District that permanent funding for the D'Arbonne loan would be available by mid-June 1985 and that such proceeds would be deposited in the First National Bank of Shreveport for the account of Homer. In a letter dated September 24, 1985, Tri-District advised Homer that the funds for the permanent financing, in the form of a grant from the Economic Development *156 Administration, had been approved but that it was necessary for Tri-District to obtain a 25% cash match of non-federal funds. Tri-District advised further that the matter of this cash match should be resolved within sixty days. From September 24, 1985 through January 3, 1986 Homer was continuously assured by Tri-District that Tri-District intended to fund the loan to D'Arbonne. Homer extended payment of the interim financing loan to D'Arbonne based on the latter assurances. In a letter dated January 3, 1986, Homer made formal demand upon Tri-District to fund the permanent financing loan to D'Arbonne. At a March 17, 1986 meeting between representatives of Homer and Tri-District, the former offered to loan the latter the money necessary to fund the cross match required by the Economic Development Administration.[5] On June 6, 1986, Homer was advised by Tri-District that it would not fund a permanent loan to D'Arbonne.
Homer next makes the allegations that it is a third party beneficiary to the contract of commitment made by Tri-District and that, as a result of the action of Tri-District, it suffered damages in the amount of $150,000.00.[6]
We have carefully considered the issue presented and conclude that the factual allegations of plaintiff's petition do not state a justiciable cause against the defendant and/or that plaintiff has failed to establish that it falls within the general class in whose favor the law grants the cause of action sought to be asserted, and the trial court clearly erred when it concluded otherwise. We are cognizant of the established principle that the exception of no cause of action may be sustained only when the facts alleged fail to state a cause of action on any ground.
The allegations of the petition do not allege any privity whatever between Homer and Tri-District which is essential to a cause of action in contract or quasi-contract. Further, a reasonable interpretation of the allegations of Homer's petition prompts the conclusion that such facts do not state a cause of action ex delicto against Tri-District. Homer does not contend and has not urged that it has stated a cause of action or has a right of action against Tri-District in contract, quasi-contract or tort. Rather, Homer contends only that, under the pleaded facts, it has stated a cause of action, and presumably has a right of action, for damages or, in the alternative, for specific performance, as a third party beneficiary to the contract between Tri-District and D'Arbonne. We have thoughtfully considered this contention and reject same for the reasons which follow.
The concept of a stipulation made in favor of a third party beneficiary (stipulation pour autrui) and its effect is found in La.C. C. arts. 1978 et seq., formerly La.C.C. arts. 1890 (1870) et seq. La.C.C. art. 1978 provides as follows:
"A contracting party may stipulate a benefit for a third person called a third party beneficiary.
Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement."
It is well established in our jurisprudence that a stipulation pour autrui is never presumed. Rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969); Fontenot v. Marquette Casualty Company, 258 La. 671, 247 So.2d 572 (1971); Teachers' Retirement System of Louisiana et al v. Louisiana State Employees' Retirement System, supra. Most of the reported decisions on stipulations pour autrui indicate that to be enforceable, the *157 contract between the parties must not only make clear and manifest their intent to confer a benefit on a third person but must also be in writing. This latter jurisprudential requirement for successfully maintaining an action on a stipulation pour autrui is seriously questioned in a recent decision by our brethren of the Second Circuit in Wall v. First National Bank of Shreveport, 482 So.2d 865 (La.App. 2d Cir.1986). In Wall, supra, the court did not reach a firm conclusion on the issue but concluded as follows:
"The plaintiff corporations argue that, even if the stipulation must be in writing, the requirement is satisfied by two "date notes" which were executed as a part of the agreement by the Bank to make the loan to the Wall plaintiffs. As long as there is a conceivable possibility that plaintiffs may be able to prove that some writing such as the two notes once existed, the corporate plaintiffs should be given the opportunity to amend even if the Fontenot dicta is the law. Compare Louisiana & So. Life Ins. v. New Orleans S.S., 384 So.2d 594 (La.App. 4th Cir. 1980); Ustica Enterprises, Inc. v. Costello, 434 So.2d 137 (La.App. 5th Cir. 1983); Teacher's Ret. System v. La. St. Employees, 456 So.2d 594 (La.1984)."[7]
Homer's petition in paragraphs 5 and 6 makes reference to the application for permanent financing by D'Arbonne to Tri-District and the subsequent approval by Tri-District of the application, however, these articles do not allege that either the application or the approval was in writing. More importantly, there is no allegation of fact as to the manner in which the contracting parties may have made manifest their intent that the commitment for permanent financing was intended to redound to the ultimate benefit of Homer. In fact, a close perusal of the allegations of Homer's petition does not make clear or manifest that, at the time Tri-District allegedly committed itself to grant permanent financing to D'Arbonne, Tri-District was even aware of any previous negotiations between D'Arbonne and Homer. Although in Article 6 of its petition Homer alleges that "(t)he bank was subsequently advised that the loan had been approved", there is no indication how Homer received this knowledge. Further, we note that the first factual allegation concerning any contact between Homer and Tri-District appears in Article 8 of the petition wherein it is stated that on April 19, 1985 Homer was advised by a representative of Tri-District that the permanent financing loan would be funded within thirty days. It is clear from plaintiff's petition that the alleged commitment to D'Arbonne and the first installment of interim financing (Article 7 of plaintiff's petition) occurred long prior to this first pleaded contact between Homer and Tri-District.
In connection with these observations, we find pertinent the discussion by Professor J. Denson Smith of "incidental benefits" vis-a-vis "stipulations pour autrui" in his article Stipulations Pour Autrui at 11 Tulane L.Rev. 18 (1936), wherein he stated at page 28:
"But it is also true that not every promise, performance of which may be advantageous to a third person, will create in him an actionable right. The problem is to separate the cases where an advantage has been stipulated from those where the advantage relied upon is merely an incident of the contract between the parties."
For these reasons, we conclude that the defendant's peremptory exception should have been sustained and the trial court erred when it overruled same. It necessarily follows that, since plaintiff has failed thus far to state a cause of action and/or establish that it has a right of action to the relief sought, the trial court's rendition of judgment on confirmation of default against defendant was error and must be reversed. Finally, since there is a possibility that plaintiff may be able to amend its petition to remove the grounds of objection noted above, it should be given this opportunity. La.C.C.P. art. 934.
Accordingly, the judgment of the trial court in favor of plaintiff, Homer National *158 Bank, and against defendant, Tri-District Development Corporation, dated May 7, 1987 is reversed and set aside. Further, the judgment of the trial court dated March 24, 1987 overruling defendant's peremptory exception is also reversed and set aside and it is now ordered, adjudged and decreed that the peremptory exception be sustained. This matter is remanded to the trial court to allow plaintiff, Homer National Bank, 15 days from the date this opinion becomes final in which to amend its petition to cure the grounds for the exception, in default of which plaintiff's action shall be dismissed. Appellee, Homer National Bank, is assessed with all costs of this appeal. Costs at the trial level shall await a final determination of this matter.
REVERSED AND REMANDED.
NOTES
[1] D'Arbonne and the Longs are not parties to this suit.
[2] It can be persuasively argued that the proper peremptory exception which should have been filed, under the facts alleged, would be the exception of no right of action which raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation. The want of interest raised by the exception relates primarily to whether the particular plaintiff falls, as a matter of law, within the general class in whose favor the law grants the cause of action sought to be asserted by the suit. Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir, 1967). See Teachers' Retirement System of Louisiana et al v. Louisiana State Employees' Retirement System, 444 So.2d 193 (La.App. 1st Cir.1983), writ granted. 448 So.2d 108 (La.1984), reversed, 456 So.2d 594 (La.1984); Wall v. First National Bank of Shreveport, 482 So.2d 865 (La. App. 2d Cir.1986). Since this court, on its own motion, may notice the lack of plaintiffs right or interest to institute the suit, the fact that defendant may have filed the wrong exception is of no moment.
[3] Plaintiffs petition does not allege how, by whom or in what manner Homer received notice of Tri-District's agreement to provide permanent financing to D'Arbonne.
[4] Plaintiff's petition does not allege how or in what manner it assured itself that the mortgages for the permanent financing had been accepted by Tri-District.
[5] This offer was presumably refused. The petition does not so state.
[6] Homer's allegation that it is a third party beneficiary to the contract of commitment is a legal conclusion. Further, we observe that Homer fails to allege facts reflecting how it suffered damages. Specifically, we note that Homer has not even alleged that the interim loans extended by it to D'Arbonne are in default.
[7] Fontenot v. Marquette Casualty Company, supra.