| LAUNDERS, Judge.
Plaintiff, a class representative of all small business owners in a certain region of this state, has sued defendant, a waste company doing business in the region, alleging monopolization in violation of Louisiana R.S. 51:123.
Plaintiff alleges that the penal provisions inserted by defendant in its contracts with similarly affected small business consumers unlawfully stifles competition to the detriment of plaintiff and other similarly affected enterprises.
The trial court granted defendant’s exception of no cause of action, apparently persuaded by defendant’s argument that plaintiff could state no relief in view of ^defendant’s willingness to decline to enforce the contract’s provisions against the class representative.
For the following reasons, we reverse the trial court’s judgment and remand for further proceedings. In doing so, however, we uphold the trial court’s exclusion of certain evidence.

FACTS

The Petition

The petition filed by plaintiff d.b.a. Monju-ni of Natchitoches maintains that he purchased waste hauling services from defendant Waste Management of Louisiana, Inc. (“Waste Management”) pursuant to a contract with defendant whose terms, according to plaintiff, prevent new competition from engaging in the waste hauling business. According to plaintiff, defendant’s contract with consumers stifled competition by making it unduly burdensome for defendant’s present customers to switch to competing haulers. The result, according to plaintiff, is that the cost of hauling small solid waste containers is artificially fixed by defendant rather than by market forces, and at a price higher than would be the case in the absence of defendant’s anticompetitive conduct. Plaintiff further maintains that he personally was injured by defendant’s anticompetitive conduct because he was forced to pay more for the waste hauling services than he would have had to pay otherwise.

The Contract

The contract of which plaintiff complains gives defendant the right to collect and dispose of all of his and other consumers’ solid waste and reeyclables for a term of three years, with automatic renewals unless contrary written notice of cancellation is provided by certified mail sixty days from the end of the term; liquidated damages for the months remaining under the three year original or renewed contract; plus ajgclause requiring the customer to give defendant notice of any offers by or to another solid waste hauling firm.

The Law

Plaintiffs suit is made in reliance on La. R.S. 51:123, which contains the following prohibition:
§ 123. Monopolizing trade or commerce prohibited; penalty
No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state.
Whoever violates this Section shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both.
Citing this statute and La. Power & Light Co. v. United Gas Pipe Line, 493 So.2d 1149, 1162 (La.1986), which states, “The ability to control price, as well as the ability to exclude competition from the market, is part of the traditional definition of monopoly power,” *850 plaintiff maintains that the trial court erred in granting defendant’s exception of no cause of action. Plaintiffs argument thus is based on ground of-sweeping public policy.

The Defense

Rather than contest the substantive points of plaintiffs petition, defendants urge that we affirm the trial court’s judgment on the basis of its having decided to decline to enforce the provisions of the contract between it and plaintiff.

OPINION

The laws of this state and nation supporting the preservation of free and fair competition to the extent possible rest on the premise that the unrestrained interaction of competitive forces yields the best allocation of economic resources at the lowest prices and at the highest quality, both to the benefit of consumers. State and Federal ^policies supporting free trade are beyond question, having been “founded on basic American conservatism, which seeks ways to divide, limit, and defuse power, whether it be governmental or not.” La. Power & Light Co. v. United Gas Pipe Line, 493 So.2d at 1152-53 (citation and notes omitted). In the commercial sphere, what this means is that the manipulation of markets by any illegitimate means having the natural tendency or probable effect of excluding competition will not be tolerated. La. Power & Light Co. v. United Gas Pipe Line; Tooke and Reynolds v. Bastrop Ice & Storage Co., 172 La. 781, 135 So. 239 (1931).
This concept is applied broadly to any unlawful means that might restrain free trade. Thus, in Tooke and Reynolds, the monopolist was deterred in its efforts to restrain competition by driving a competitor out of the ice business, notwithstanding that it sought to do so by lowering prices, because without competition the sole ice house would then possess the power to raise prices above competitive levels. La. Power & Light Co. v. United Gas Pipe Line Company, 493 So.2d at 1162, n. 33.
In view of the larger context, therefore, the question before us really is not contractual at all. Rather, in the context of the granted exception of no cause of action, it is whether a monopolist may sidestep the public policy charges leveled against it by declining fo press against a consumer class representative the advantages of which it has availed itself.
Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. La.C.C.P. art. 865. Teachers’ Retirement System of Louisiana v. Louisiana State Employees’ Retirement System, 456 So.2d 594 (La.1984); Haskins v. Clary, 346 So.2d 193 (La.1977); Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975). When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Teachers’ Retirement System of Louisiana v. Louisiana State Employees’ Retirement System, supra; Henson v. St. Paul Fire and Marine Insurance Co., 363 So.2d 711 (La.1978). The purpose of an 15exception of no cause of action is to determine the sufficiency in law of the petition and is triable on the face of the papers; for the purpose of determining the issues raised by this exception, the well pleaded facts in the petition and any annexed documents must be accepted as, true. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Darville v. Texaco, Inc., 447 So.2d 473 (La.1984); Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (1971).
Kuebler v. Martin 578 So.2d 113, 114 (La.1991).
La. Power & Light Co. leaves no room for doubt as to this state’s favor upon free and fair competition, nor its disfavor against anticompetitive behavior. Tooke and Reynolds leaves no question but that restraints to free trade shall not be tolerated under any guise. Today, we extend these rules logically, to hold that an alleged monopolist sued in an antitrust action under La. R.S. 51:123 will not be permitted by civil assassination of the class representative to thwart the very purpose underlying the rules of civil procedure, to effectuate substantive *851 consideration of the issues,[1] for to do otherwise would enable parties who have indeed manipulated our economic system, to evade a fair and impartial hearing by extending their hegemony in the marketplace to the very courtroom in which every citizen is to be accorded an equal prospect of a fair hearing without regard to financial status.[2]
We hold that a party litigant against whom has been presented considerable evidence of monopolistic and anticompetitive practices may not avoid accountability to the consumer-at-large simply by declining to prosecute its civil advantage against ] (¡the lead plaintiff. Accordingly, a remand is required so that plaintiffs in this class action may prosecute their civil claims against defendant in accordance with La. R.S. 51:123.

EVIDENTIARY RULINGS

The class plaintiff also complains of the trial court’s refusal to admit into evidence a Competitive Impact State and a Consent Decree pertaining to Federal proceedings involving defendant’s operations in Louisiana.
The Competitive Impact Statement was compiled and submitted by the U.S. Justice Department s Antitrust Division and filed in February 15, 1996, in the United States District Court for the Southern District of Georgia, Savannah Division and sets forth in more detail the charges of antitrust against the defendant and its Georgia sister, Waste Management of Georgia, Inc.
Following the filing of this Statement, on May 20, 1996, the defendants and the United States government joined in filing a Consent Decree limiting or prohibiting some of the more outrageous portions of the contract now complained of.[3] According to plaintiff, these reports should have been admitted pursuant to La. R.S. 51:133, which generally permits the introduction of governmental reports.[4] |7 Defendant argues that the trial court correctly declined to consider either instrument before ruling on the merits, as the Clayton Act clearly seems to suggest that neither should be made available as prima facie evidence against public antitrust defendants in subsequent private antitrust cases.
We conclude that the trial court did not err in refusing to allow plaintiff use of the consent decree to make a prima facie case. The Consent Decree is inadmissible, *852 as it represents a deal struck between Waste Management and the United States government before trial or discovery, let alone before judgment. See generally, Southern Pacific Communications Co. v. American Tel. & Tel. Co., 740 F.2d 1011 (D.C.Cir.1984); La.R.S. 51:132.
We likewise conclude that plaintiff has failed to show that the trial court erred in refusing to permit him use of the Competitive Impact Statement prepared by the Justice Department. Plaintiff concedes in his brief that the statement would be inadmissible in Federal court, but argues that Louisiana procedural statutes and rules should govern this state court action. The question presented therefore is one of preemption. Plaintiff cites no authority which convinces us that the Supreme Court |gdoes not require that we uphold the finding of the trial court on the basis of Federal authority.
Our decision on a federal statute’s preemptive effect is governed, in large measure, by the Supremacy Clause of Article VI of the United States Constitution. The Supremacy Clause mandates that the Constitution, and the laws of the United States ... shall be the supreme law of the land; and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.
U.S. CONST. ART. VI, el. 2.
Hopkins v. American Cyanamid Co., 95-1088, p. 10 (La.1/16/96); 666 So.2d 615, 622 (La.1996).
Because in this ease, we have been afforded no basis for adopting the premise of plaintiffs argument, we reject it, and uphold the inadmissibility of the competitive impact statement. Accordingly, we find no basis for upsetting the evidentiary rulings by the trial court of which plaintiff presently complains.

DECREE

For the foregoing reasons, the evidentiary rulings rendered by the trial court are upheld, but its judgment on the merits is reversed and remanded for further proceedings in accordance with the authority cited herein.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN PART.

. The rules of procedure implement the law and are not an end in themselves. La.Code Civ. Pro. 5051.

. As Article 1, § 22, Access to Courts, states:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.

. Among other things, the consent decree enjoined and restrained the defendants in both Louisiana and Georgia from entering into contracts with initial terms longer than two years and renewal terms longer than one year, requiring more than thirty days notice of termination, and requiring payments of liquid damages of the magnitude originally called for.

. The provision is reproduced here:
§ 133. Evidence; defendant’s documents; legislative and administrative reports; judicial records
In any suit under this Part, the judge shall give the books, letters, and other documents, or apparent copies of them, belonging to the defendant, full effect as being what they purport to be and as establishing the facts carried on their face, unless there is sufficient rebuttal or countervailing proof, against them. Such books, letters or other documents, or apparent copies of them, shall be received in evidence without other formality than proof of their having been under the control of the defendant.
The judge shall receive in evidence any report by a legislative committee of Louisiana, or of the Senate or House of Representatives of the United States, or of any bureau, department, or any commission organized or acting under the authority either of this state or the United States, pertinent to the issue. The judge shall receive in evidence any record or parts of the record of any court of any state or of the United States in any legal proceeding to which the defendant is or has been a party, on the condition that all of the record is produced unless the certificate of the custodian shows that all of it is not obtainable. However, the testimony of a witness shall not be received unless the party against whom it is offered has had the opportunity to cross-examine, but the defendant may put the record, or parts of it, in evidence whether the state or other plaintiff has had the right to cross-examine or not, and in the absence of denial, explanation, or counter-proof, the report, record, or testimony, shall be prima facie evidence of the facts set forth.